UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| EUNICE WEAVER, | : | Case No. 1:07-cv-0053 |
| Plaintiff, | : | |
| | : | Judge Barrett |
| | : | Magistrate Judge Black |
| vs. | : | |
| MICHAEL ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | : | |
| Defendant. | | |

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; AND (2) THIS CASE BE CLOSED**

This is a Social Security appeal brought pursuant to 42 U.S.C. § 405(g). At issue is whether the administrative law judge ("ALJ") erred in finding that plaintiff was not entitled to Disability Insurance Benefits ("DIB"), Supplemental Security Income ("SSI") and/or Disabled Widow's Benefits ("WIB"). (*See* Administrative Transcript ("Tr.") (Tr. at 15-24) (ALJ's decision)).

**I.**

Plaintiff filed her applications for DIB and SSI on December 30, 2003, and filed her application for WIB in July 2005, alleging disability as of May 20, 2002, due to neck and shoulder pain, interstitial cystitis, and lower back and pelvic pain. (Tr. 54-56, 347-49).

Upon denial of plaintiff's claims on the state agency level, she requested a hearing

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

*de novo* before ALJ Larry Temin. A hearing was held on August 25, 2005, and plaintiff attended the hearing, represented by counsel, and offered her testimony, as did a vocational expert. (Tr. 360-401). On July 8, 2006, the ALJ issued an unfavorable decision. (Tr. 12-24). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr. 6-8). Plaintiff now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

The ALJ's "Findings," which represent the rationale of his decision, were as follows:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.

2.  The claimant is the unmarried widow of the deceased insured worker and has attained the age of 50. The claimant meets the non-disability requirements for disabled widow's benefits set forth in section 202(e) of the Social Security Act.

3.  The insured worker died on April 14, 2005, the prescribed period beginning date. The prescribed period during which the widow must establish the onset of disability ends on April 14, 2012.

4.  The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 404.1520(b) and 416.920(b)).

5.  The claimant has the following combination of impairments: cervical spine degenerative disc disease/spondylosis; interstitial cystitis; and left shoulder degenerative joint disease/history of partial rotator cuff tear (20 CFR 404.1520(c) and 416.920(c).

6.  The claimant does not have an impairment or combination of impairments that meets or medically equals one fo the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 §§, 416.920(d), 416.925 and 416.926).

7.  After careful consideration of the entire record, the undersigned finds that

>    the claimant has residual functional capacity to perform the requirements of work activity except as follows: She can lift, carry, push, and pull only up to 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk for up to 6 hours in an eight-hour workday. She is able to sit for up to six hours in an eight-hour workday. She can only occasionally stoop, kneel, crouch, and climb ramps an stairs. She is able to reach above shoulder level with the upper extremities only occasionally, and perform flexion, extension, and rotation of the head and neck only occasionally. She cannot crawl or climb ladders, ropes or scaffolds.
>
> 8.  The claimant is capable of performing past relevant work as a mail sorter. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).
>
> 9.  The claimant was not under a "disability" as defined in the Social Security Act, from May 20, 2002 through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 17 - 24.)

The ALJ concluded that plaintiff was not entitled to a period of disability, DIB or WIB during the closed period. (Tr. 24).

On appeal, plaintiff asserts that: (1) the ALJ erred in finding that plaintiff could perform her past relevant employment; (2) the ALJ erred in failing to give controlling weight to the opinion of plaintiff's treating source; and (3) the ALJ failed to apply the correct legal standards in evaluating plaintiff's credibility. Each assertion will be addressed in turn.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is

3

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

Upon consideration of an application for disability benefits, the ALJ is guided by a sequential benefits analysis, which works as follows: At Step 1, the ALJ asks if the claimant is still performing substantial gainful activity; at Step 2, the ALJ determines if one or more of the claimant's impairments are "severe"; at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the ALJ determines whether or not the claimant can still perform her past relevant work; and, finally, at Step 5 – the step at which the burden of proof shifts to the ALJ – the ALJ determines, once it is established that the claimant can no longer perform her past relevant work, whether significant numbers of other jobs exist in the national economy which the claimant can perform. *See Gwizdala v. Commissioner of Soc. Sec.,* No. 98-1525, 1999 WL 777534, at *2 n.1 (6th Cir. Sept. 16, 1999) (*per*

*curiam*).  If the ALJ determines at Step 4 that the claimant can perform her past relevant work, the ALJ need not complete the sequential analysis.  *See* 20 C.F.R. § 404.1520(a).  However, if the ALJ errs in finding that the claimant can perform her past relevant work, the matter should be remanded for further consideration under Step 5.  *See Lauer v. Bowen*, 818 F.2d 636, 641 (7th Cir. 1987).

The claimant bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  That is, she must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job in the national economy.  42 U.S.C. § 423(d)(1)(A).

### III.

For her three assignments of error, plaintiff asserts that the ALJ erred by not finding Dr. Deehan's and Dr. Tigar's opinions to be controlling opinions of a treating source, by not following the correct legal standard in his determination of credibility, and by finding erroneously that plaintiff could perform her former relevant employment.  Plaintiff's assertions are unavailing, however.

Plaintiff disagrees with the ALJ's residual functional capacity (RFC) finding. Plaintiff argues that the ALJ substituted his own opinion for that of the treating physician and further contends that the ALJ erred by not giving the opinion of Dr. Dheenan controlling or significant weight (Pl. Br. at 5-11).  However, the ALJ bears the responsibility for resolving conflicts and weighing the medical evidence in the record.  *See*

5

*Richardson,* 402 U.S. at 399 ("We . . . are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict."). An ALJ is not required to accept an opinion of disability because a medical source's opinion about the ultimate issue of disability is entitled to no particular weight. *See* 20 C.F.R. § 404.1527(e)(1) (The Commissioner is responsible for making the determination about whether a claimant meets the statutory definition of disability). Less weight is given to medical source opinions that are inconsistent with the evidence as a whole and not well-supported. *See* 20 C.F.R. §§ 404.1527(d)(2), (d)(3), and (d)(4). An ALJ is ultimately responsible for assessing plaintiff's RFC, considering medical source opinions and other relevant evidence. *See* 20 C.F.R. §§ 404.1527(e), 404.1545.

      The ALJ, who is responsible for weighing the evidence, reasonably considered Dr. Dheenan's opinion in light of the other record evidence in determining that Plaintiff could work with some limitations. To the extent that Dr. Dheenan's opinion, or portions thereof, were conclusory, unsupported and inconsistent, they were not entitled to controlling or any great weight.

      Here, the ALJ gave those portions of Dr. Dheenan's opinion which were consistent with the record evidence as a whole "some weight" (Tr. 23). For instance, the ALJ found that Dr. Dheenan's statement that plaintiff needed to void every two to three hours during the day was consistent with plaintiff's allegations that she frequently urinated (Tr. 23, 345). As the ALJ reasonably found, this frequency was consistent with normal work breaks (Tr. 23). However, the ALJ reasonably rejected Dr. Dheenan's opinion that Plaintiff could not work away from home because of fatigue and frequent voiding because

6

those statements were inconsistent with the record evidence as a whole and not well-supported (Tr. 21, 23, 338). See 20 C.F.R. §404.1527(d)(4).

Moreover, as plaintiff acknowledges, the ALJ rejected Dr. Dheenan's opinion because it was difficult to determine the frequency of Dr. Dheenan's contact with Plaintiff (Pl. Br. at 5-6; Tr. 23). This was a factor that the ALJ properly considered in determining the weight to give Dr. Dheenan's opinion. *See* 20 C.F.R. § 404.1527(d)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion").

The ALJ also rejected Dr. Dheenan's statement that plaintiff was limited to lifting 15 pounds occasionally and could only sit for one-half hour at a time because he provided no support for his assessment (Tr. 23, 336-37). Indeed, this is in stark contrast to plaintiff's own testimony that she could sit for three hours at a time (Tr. 382).

The ALJ further found that Dr. Dheenan's opinion of disability was seemingly based on plaintiff's report of fatigue rather than objective evidence, and, indeed, the record evidence did not support such an extreme assessment (Tr. 23).

For instance, the ALJ noted that Dr. Buffington, a physician out of the same office as Dr.Dheenan, and who was plaintiff's primary care physician for cystitis, opined that"[t]here's no reason for disability based on urologic reasons at this time" (Tr. 19-20, 23, 146).[2] The record also demonstrated that plaintiff's urological condition had shown some improvement with treatment (Tr. 20, 153, 155). Furthermore, the ALJ found that

---

[2] Plaintiff argues that this note was initialed by "SP" and it is unclear whether this form was completed by Dr. Buffington (Pl. Br. at 8). Nevertheless, Plaintiff does not dispute that someone, presumably a physician authorized by Dr. Buffington, provided this opinion to the state agency.

although plaintiff alleged she had frequent "flare-ups," there was no record support for this contention (Tr. 20). Indeed, plaintiff acknowledges that there was at least a ten-month period when she was not even seen by an urologist (Pl. Br. at 8). As the ALJ observed, there was a significant period of time before September 2004 where plaintiff did not seek office visits but requested medication refills over the phone (Tr. 20, 155-57, 307-08). Thereafter, plaintiff sought additional treatment in September and October 2004 and subsequent surgical intervention in January 2005, at which time Dr. Dheenan reported that plaintiff had no bladder tumors or calculi, normal trigone and urethra and had only moderate findings of IC (Tr. 304-06). Moreover, after the January 2005 surgery, plaintiff was a "no show" for her February 2005 appointment, and in March 2005, she did not have an office visit but only called in a request for a medication refill (Tr. 303).

Dr. Dheenan did not evaluate plaintiff again until August 2005, seven months after the January 2005 surgery (Tr. 302-03, 310-11). Although plaintiff contends that she did not have the financial means to seek treatment, this contention is unavailing. *Cf. Cornette v. Sec'y. of Health and Human Servs.*, 869 F.2d 260, 263-64 (6th Cir. 1988).

Based on the record evidence, it was reasonable for the ALJ to reject Dr. Dheenan's opinion and to find that plaintiff's complaints of disabling limitations related to IC were not fully credible. *See* SSR 96-7p (claimant is less credible if level of treatment is inconsistent with level of complaints). As such, the ALJ reasonably rejected Dr. Dheenan's opinion because it was not well-supported by, and inconsistent with, other record evidence.

Similarly, the ALJ reasonably rejected the opinion of plaintiff's family doctor, Dr. Tigar, that plaintiff could not even perform sedentary work because his opinion was inconsistent with the record evidence and not supported by his treatment records (Tr. 22-23). Contrary to plaintiff's contention, Dr. Tigar's treatment records did not support his extreme limitations. A review of Dr. Tigar's treatment records, after plaintiff's alleged onset date, demonstrate that he saw plaintiff periodically and his treatment primarily consisted of medication refills and referrals to specialists (Tr. 174-94). Moreover, as the ALJ observed, there was an eight-month period when Dr. Tigar did not see plaintiff, from April 2003 to December 2003 (Tr. 22, 193-94). *See* 20 C.F.R. § 404.1527(d)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion").

Further, other medical evidence failed to support Dr. Tigar's extreme opinion. Plaintiff had some improvement with physical therapy (Tr. 209). In October 2002, Jesse Portugal, M.D. evaluated plaintiff for complaints of chronic neck pain and diffuse pain and tingling throughout her left arm (Tr. 246-53). On examination, despite problems with her left upper extremity, plaintiff had intact light touch in the arms, 5/5 strength in the right arm, and no muscle atrophy (Tr. 248). Dr. Portugal recommended diagnostic studies (Tr. 248-49), but he subsequently noted that plaintiff had problems with attending scheduled appointments and stated that she "apparently has questionable motives to take care of this problem" (Tr. 251). An electro diagnostic study proved to be normal (Tr. 252, 254, 256). In November 2002, Dr. Portugal recommended an orthopedic second opinion. However, as

9

the ALJ observed, there was no evidence plaintiff followed through with the recommended treatment (Tr. 22, 252-53). Plaintiff did not seek another orthopedic evaluation until one year later in November 2003, when she had another work-related incident (Tr. 258-59). Indeed, when plaintiff sought treatment with Hancock, a chiropractor, he noted that plaintiff had not sought treatment for neck or shoulder pain for about one year, from November 2002 to November 2003 (Tr. 267).

This evidence does not support Dr. Tigar's opinion of disability. Absent supporting evidence for his opinion, the ALJ was not required to credit it or give it controlling or great weight. *See* 20 C.F.R. §§ 404.1527(d)(2) and (d)(3).

Other record evidence also supported the ALJ's finding that plaintiff was not credible to the extent she claimed she could not perform a range of light work. *See Gooch v. Sec'y. ofHealth and Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987) (an ALJ's credibility finding in particular is entitled to considerable deference, and reviewing courts do not generally make de novo credibility findings). The ALJ noted that after her alleged onset date, plaintiff had work activity that he determined constituted substantial gainful activity until December 9, 2002; and noted that plaintiff had earnings in 2003 (Tr. 18, 82, 96, 368-73). Moreover, Hancock, the chiropractor, noted that plaintiff had been working and re-injured herself at work in November 2003 (Tr. 258, 267). This evidence failed to support Drs. Dheenan's and Tigar's opinions of disability and plaintiff's allegations of disabling impairments.

The ALJ also discounted plaintiff's allegations of disabling pain based on the fact that plaintiff performed a variety of activities, including driving, shopping, paying her

10

bills, light housekeeping, doing yard work, visiting her father, and taking out the trash (Tr. 23, 385-87). This record evidence seriously undermined plaintiff's allegations of disabling pain. *See* 20 C.F.R. § 404.1529(c)(4) (ALJ considers whether there are inconsistencies in the evidence and any conflicts between the claimant's statements and the other record evidence in determining the extent to which the claimant's symptoms diminish his capacity for basic work activities).

The ALJ also considered the opinion of the state agency physicians, who did not find plaintiff disabled, but instead opined that she could perform a reduced range of medium work (Tr. 22, 278-83, 301). Nevertheless, the ALJ ultimately concluded that, based on the evidence as a whole, plaintiff had greater restrictions than those found by the state agency physicians and found that plaintiff could perform the lesser range of light work (Tr. 19). Based on the record evidence as a whole, the ALJ 's finding that plaintiff's subjective complaints were not fully credible and that she could perform a range of light work was entirely reasonable.

Plaintiff challenges the ALJ's credibility finding (Pl. Br. at 11-16). Plaintiff has suggested that the ALJ failed to address the credibility factors as outlined in the regulations at 20 C.F.R. § 404.1529 and SSR 96 -7p (Id.). However, the ALJ reasonably considered plaintiff's allegations and testimony and articulated the weight given those statements in the context of the record as a whole (Tr. 18-23). *See Price v. Heckler*, 767 F.2d 281, 284 (6th Cir. 1985) (although the ALJ's findings of fact could have been stated with more particularity, remand would not be appropriate where his findings were not

11

legally insufficient). An ALJ's credibility finding in particular is entitled to considerable deference, and reviewing courts do not generally make de novo credibility findings. *See Gooch v. Sec'y. of Health and Human Servs.,* 833 F.2d 589, 592 (6th Cir. 1987) ("[W]e will not normally substitute our impressions on the veracity of a witness for those of the trier of fact."). Here, the record as a whole supports the conclusion that plaintiff's allegations of disabling pain were not fully credible. *See* 20 C.F.R. § 404.1520 (an ALJ must consider the record evidence as a whole in assessing whether a claimant is "disabled").

The ALJ considered the medical source opinions, plaintiff's testimony, and the other record evidence in determining that plaintiff was not disabled because she could perform a range of light work. The ALJ reasonably accommodated plaintiff's impairments, and the record evidence failed to establish that plaintiff required more limitations than those found by the ALJ.

Finally, for her third assignment of error, the plaintiff argues that ALJ erred by relying on the VE testimony that she could perform her past work because she performed it at the medium to heavy exertional level, not as it was customarily performed at the light level (Pl. Br. at 5). However, this argument is without merit and is contrary to the regulations.

An ALJ may consider vocational expert testimony in determining whether a claimant is able to perform past relevant work. *See* 20 C.F.R. § 404.1560(b). A claimant will be considered not disabled where she retains the RFC to perform her past relevant

12

work "either as [she] actually performed it or as generally performed in the national economy." *See* 20 C.F.R. § 404.1560(b)(2). The VE testified that the hypothetical individual could perform plaintiff's past work as a mail sorter as was customarily performed (Tr. 397-98). Thus, the ALJ reasonably concluded that plaintiff was not disabled at step four of the sequential analysis because she could perform her past relevant work (Tr. 23-24). *See Smith v. Sec'y of Health & Human Servs.,* 893 F.2d 106 (6th Cir. 1989).

## IV.

For the foregoing reasons, plaintiff's assignments of error are without merit. The ALJ's decision is supported by substantial evidence and should be affirmed.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The decision of the Commissioner is **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and should be **AFFIRMED.**

2. As no further matters remain pending for the Court's review, this case should be **CLOSED.**

Date: March 18, 2008  s/Timothy S. Black
Timothy S. Black
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| EUNICE WEAVER, | : | Case No. 1:07CV0053 |
| | : | |
| Plaintiff, | : | |
| | : | Judge Barrett |
| | : | Magistrate Judge Black |
| vs. | : | |
| | : | |
| MICHAEL ASTRUE | : | |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | | |
| Defendant. | | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **TEN (10) DAYS** after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to **THIRTEEN (13) DAYS** (excluding intervening Saturdays, Sundays, and legal holidays) when this Report is being served by mail and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within **TEN (10) DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).